IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-00269-SKC

EHSAN AYATIGHAFFARI,

      Petitioner,

v.

JUAN BALTAZAR, *et al.*,

      Respondents.

---

## ORDER

---

Before the Court is Petitioner's Amended Application for Writ of Habeas Corpus. Dkt. 13. This Court ordered Respondents to respond to the Amended Petition and show cause why it should not be granted. Dkt. 17. On April 13, 2026, Respondents filed their Response. Dkt. 20. For the reasons shared below, the Court GRANTS Petitioner's Application.

Petitioner Ehsan Ayatighaffari is a native and citizen of Iran who entered the United States as a lawful permanent resident in 1999.[1] Dkt. 13, p.1. On January 28, 2010, Petitioner was convicted of aggravated assault with a deadly weapon, which resulted in his placement in removal proceedings. *Id.*; Dkt. 20, p.2. On September 29,

---

[1] Respondents assert that Petitioner was admitted to the United States as a lawful permanent resident in 2008; however, this discrepancy is not material to the Court's decision. Dk. 20, p.2.

2011, Petitioner was issued a Notice to Appear which charged him with being deportable from the United States under 8 U.S.C. § 1227(a)(2)(A)(i) (a noncitizen convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of five years or more may be imposed) and 8 U.S.C. § 1227(a)(2)(iii) (a noncitizen who at any time after admission is convicted of an aggravated felony that is defined as a crime of violence for which the term of imprisonment ordered was at least one year). Dkt. 20, pp.2–3. On October 5, 2011, an immigration judge sustained the charges of removability and ordered Petitioner removed to Iran. *Id.* at p.3. Both parties waived their right to appeal, so the immigration judge's order became final on October 5, 2011. *Id.*

On January 9, 2012, ICE released Petitioner on an Order of Supervision (OSUP) after attempts to obtain a travel document to Iran were unsuccessful. *Id.* Petitioner has fully complied with the OSUP, including attending regularly scheduled check-ins with ICE and wearing an ankle monitor. Dkt. 13, p.5. On February 19, 2023, the Iranian consulate declined to issue a travel document to Petitioner because he did not submit original Iranian identity documents in support of the application.[2] Dkt. 20, p.3.

Then, on June 22, 2025, without notice or explanation, ICE officers arrested and detained Petitioner near Littleton, Colorado. Dkt. 20, p.3. ICE conducted a Post Order Custody Review hearing on December 4, 2025, and, Petitioner's compliance

---

[2] It is unclear from Respondents' briefing whether this denial was in response to the attempts to remove Petitioner to Iran in 2011, or whether a new application or request had been initiated.

with the OSUP notwithstanding, determined that Petitioner "did not satisfy the criteria for release because he failed to demonstrate that he will not pose a danger to the community or pose a significant risk of flight pending removal from the United States." *Id.* at p.4. Petitioner was given another hearing on December 9, 2025, in which ICE concluded that Petitioner should remain detained because he did not meet the criteria under 8 C.F.R. § 241.4(e). *Id.* Petitioner has remained in custody since he was detained on June 22, 2025. Dkt. 13, p.1.

On December 12, 2025, ICE submitted a travel document request to the government of Iran on behalf of Petitioner. Dkt. 20, p.4. And on December 23, 2025, the Iranian consulate requested an interview with Petitioner that took place on January 10, 2026. *Id.* No further action by Respondents or the government of Iran have taken place to effectuate Petitioner's removal.

## LEGAL STANDARD

A petition for writ of habeas corpus under 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The detention, release, and removal of noncitizens ordered removed from the United States is governed by 8 U.S.C. § 1231. When a noncitizen is ordered removed,

3

removal should ordinarily be effectuated within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1); *see also Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005). During the removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(2)(A).  After the removal period has expired, however, the noncitizen "may be detained," including, as here, where the noncitizen has been ordered removed under 8 U.S.C. § 1227(a). 8 U.S.C. 1231(a)(6).

The Supreme Court has held that detention of a noncitizen subject to a final order of removal may not be indefinite. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). The Supreme Court further determined that it is presumptively reasonable to detain a noncitizen for six months beyond the removal period to effectuate removal. *Id.* at 700–01. The Supreme Court then held that after six months, the noncitizen challenging his detention bears the initial burden to "provide [] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and once he does so, "the Government must respond with evidence sufficient to rebut the showing." *Id.* Accordingly, if the government meets its burden, continued detention is permitted; however, if the government fails to demonstrate a significant likelihood

4

of removal in the reasonably foreseeable future, the noncitizen must be released. *Id.* at 701.[3]

## ANALYSIS

Petitioner argues that his detention violates his due process rights because he has been detained for over eight months (at the time of the Petition) and his "detention is not likely to end in the reasonably foreseeable future" because "ICE has not obtained necessary travel documents and, to Petitioner's knowledge, has made no concrete efforts to effectuate his removal." Dkt. 13, p.13. In addition, Petitioner has had a removal order since 2011, and the government has failed to remove him to Iran for over 14 years. In fact, when they tried in 2011, they were unable to obtain the necessary travel documents. "[T]his history provides good reason to believe that removal is not foreseeable." *Ali v. Baltazar*, No. 1:25-cv-03317-RBJ, 2026 WL 322565, at *4 (D. Colo. Jan. 27, 2026). Thus, Petitioner has met his initial burden.

In response, Respondents assert that they have made concrete efforts to remove Petitioner, including applying for a travel document to Iran and Iran conducting an interview with Petitioner. Dkt. 20 p.10. However, while Respondents point to this activity, they do not argue that this conduct means Petitioner will be removed in the reasonably foreseeable future. And the "remote possibility of an

---

[3] *Zadvydas* dealt with a noncitizen who was deemed removable after gaining admission to the United States. *Id.* at 682. But its holding has since been expanded to apply to noncitizens who are deemed inadmissible. *Clark v. Martinez*, 543 U.S. 371, 378–89 (2005); *see also Morales-Fernandez*, 418 F.3d at 1123–24 (noting that *Clark* expanded the holding of *Zadvydas* to apply to inadmissible noncitizens and granting an inadmissible noncitizen's habeas petition).

eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025). Additionally, as mentioned above, Iran denied Petitioner travel documents in 2023, and Respondents have pointed to no evidence to suggest that the same result will not occur again. In addition, the United States is now at war with Iran, which began on February 28, 2026. *See* David Brennan, *Iran war timeline: 1 month of escalating strikes, broadening conflict*, ABC NEWS (Apr. 1, 2026, 12:25 PM), https://abcnews.com/International/iran-war-timeline-1-month-escalating-strikes-broadening/story?id=131606351.          The          conduct Respondents point to in support of their argument all occurred before the war began. The Court is skeptical that Petitioner's removal can occur in the reasonably foreseeable future to a country with which the United States is at war, and in the least, Respondents have offered no explanation on the point. Accordingly, this Court finds that Petitioner's nearly 10-month detention violates his due process rights, and he should be immediately released.

*          *          *

For the reasons shared above, Petitioner's Application for Writ of Habeas Corpus (Dkt. 13) is **GRANTED** and the Court **ORDERS** as follows:

1. Respondents are **ORDERED** to release Petitioner from custody immediately, but no later than within **12 hours** of this Order. Respondents may not impose on Petitioner any additional conditions of release or supervision beyond those Petitioner was subject to in connection with his

6

preexisting order of supervision and immediately prior to his recent detention.

2. If Petitioner resides outside of Colorado and is only in this state because Respondents transferred him here, Petitioner shall remain in Respondents' temporary custody for the sole purpose of Respondents effectuating his return to his place of residence.

3. If necessary, Respondents **SHALL** transport Petitioner back to his place of residence outside of Colorado, **at their own expense**, within **36 hours** of the date and time of this Order.

4. To effectuate the purpose of this Court's Order and allow Petitioner to return home, Respondents are also **temporarily enjoined** from detaining Petitioner for a period of **FOURTEEN DAYS**.

5. Respondents **SHALL FILE** a status report within **THREE DAYS** of this Order certifying compliance. Because the Court's ruling affords Petitioner the relief he seeks, the Court need not address Petitioner's additional legal arguments.

DATED: April 16, 2026, 9:26 AM.

BY THE COURT:

S. Kato Crews
United States District Judge

7